Kirksey v. City of Wichita.

---

No. 22,092.

J. S. KIRKSEY, *Appellant*, v. THE CITY OF WICHITA et al., *Appellees*.

SYLLABUS BY THE COURT.

1. GARBAGE—*Exclusive Right to Remove—Definition of "Garbage."* It having already been determined that a city may grant to the highest bidder an exclusive right to remove all "garbage," under an ordinance defining that word as "all rejected waste food, offal," it is now held that the same rule applies where the definition is "all organic waste or residue of animal, food or vegetable matter from kitchens and dining rooms and from the preparation of dealing in or storage of meats, fowls, fruit, vegetables and grain."

2. SAME—*City May Control Disposition of Garbage.* The fact that a number of articles which are fit for human food may be picked out of a quantity of garbage does not affect the power of the municipality absolutely to control its disposition. Where the owner of defective or damaged goods, which might be otherwise disposed of, casts them aside with ordinary garbage, they become subject to the same treatment.

Appeal from Sedgwick district court, division No. 1; RICH-ARD E. BIRD, judge. Opinion filed November 16, 1918. Affirmed.

*John W. Adams,* and *S. S. Hawks,* both of Wichita, for the appellant.

*Robert C. Foulston,* city attorney, *J. N. Haymaker, A. V. Roberts,* and *W. D. Jochems,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MASON J.: The city commissioners of Wichita passed an ordinance requiring all garbage to be deposited in metallic cans in a convenient place, and providing for its collection exclusively by a contractor selected upon competitive bidding, all other persons being forbidden to collect or remove it, under penalty of a fine. J. S. Kirksey, who had been doing a considerable business in the collection of garbage, brought an action to restrain the enforcement of this ordinance against him. He obtained a temporary injunction, which was later set aside, all relief being denied him. He appeals.

The validity of the ordinance is attacked upon the ground that it deprives the plaintiff of property without due process of law, and is in excess of the police power. An ordinance of the same general character has been upheld against these and similar objections. (*O'Neal v. Harrison,* 96 Kan. 339, 150 Pac. 551.) The plaintiff contends, however, that the ordinance now under consideration does not fall within the rule announced in the case cited, because it gives a wider scope to the meaning of the word "garbage." It was defined there as "all rejected waste food, offal;" here as "all organic waste or residue of animal, food or vegetable matter from kitchens and dining rooms and from the preparation of dealing in or storage of meats, fowls, fruit, vegetables and grain." We see no substantial difference in the scope of the two ordinances. It is true the one here involved omits the word "rejected," but the word "waste" carries practically the same implication, indicating material that has lost its value for the purposes for which it was handled by the owner, and has been cast aside. Sound judgment will be required in interpreting any definition that may be adopted, in order that the regulation may have its intended effect.

2. The ordinance provides that garbage, before being deposited in the cans, "shall be drained of surplus liquids and water, and shall be free from all deleterious matter such as glass, tin cans, papers, ashes, poison or other matter injurious to animal life." The plaintiff introduced testimony to the effect that he kept hogs which were fed from the garbage he bought and collected, but that he picked out from it a quantity of fruit and vegetables which he and his wife kept and ate. The fact that waste matter has a disposal value does not prevent the city from assuming entire control of it. (2 Dillon on Municipal Corporations, 5th ed., § 678, quoted in *O'Neal v. Harrison, supra.*) We think the circumstance that there may be some possible salvage—that here and there an article may be found in it which is fit for human food—has no greater effect. Where articles of that character are cast aside by their owner and mingled with ordinary refuse, the municipal authorities, for the purpose of guarding against offensive and possibly unwholesome odors, which would naturally arise unless such material is handled with proper care, may control the disposition of the whole mass in such way as they deem expedient—either by allowing the owner to remove it himself under certain regulations, or by taking over its removal as a public function, or by letting an exclusive contract for its handling, as was done here.

It does not follow that a dealer in perishable goods who finds himself with a quantity of them on hand which are so defective or damaged as to be unsalable in the ordinary course of business, may not sell them for some other use. But if he places them with ordinary waste matter, he elects to treat them as garbage and justifies their being so treated by others.

The judgment is affirmed.